UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRISTINA SHEIKH and | : | |
| SUELI LUPINACCI | : | |
|     Plaintiffs, | : | |
| | : | |
| vs. | : | Case No.: 3:05CV495(PCD) |
| | : | |
| JOSEPH A. MORALES, | : | |
| ROBERT J. PASCONE, | : | |
| BRIAN PISANELLI, | : | |
| OFFICER FERCHETTE and | : | |
| OFFICER PIZIGHELLI | : | |
|     Defendants | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Christina Sheikh and Sueli Lupinacci bring this action under 42 U.S.C. § 1983 for violation of their rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution. Defendants move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, arguing that (1) Plaintiffs have failed to allege action against a specific defendant, (2) Plaintiffs have failed to provide facts that support a cause of action for their constitutional claims, (3) Plaintiffs have failed to demonstrate that there was conspiracy or failure to act by Defendants, and (4) Defendants are entitled to qualified immunity. For the reasons stated below, Defendants' Motion for Summary Judgment [Doc. No. 42] is **granted**.

**I.     BACKGROUND**[1]

On the evening of July 24, 2004, Bridgeport police officers were dispatched to disperse a large crowd that had formed at the intersection of Garfield Avenue and Madison Avenue.

---

[1] The statement of facts that follows is derived from the parties Local Rule 56 statements and their briefs.

(Incident Report 040725-276 at 1, Ex. A to Defs.' Mem. Supp. Mot. Summ. J.; Pls.' Rule 56(a)(2) Statement at ¶ 3.) The crowd had apparently gathered to celebrate a championship victory for the Brazilian national soccer team. (Incident Report 040725-309 at 5, Ex. B to Defs.' Mem. Supp. Mot. Summ. J.; Pls.' Rule 56(a)(2) Statement at ¶ 2.) The impromptu celebration resulted in significant yelling, fighting, beeping of car horns, and vehicular and pedestrian gridlock. (Incident Report 040725-276; Defs.' Mem. Supp. Mot. Summ. J. 1.) At approximately 7:15 p.m., several individuals were arrested for breach of peace. (Incident Report 040725-276; Pls.' Rule 56(a)(2) Statement at ¶ 3.)  The patrol unit supervisor instructed Defendants, all Bridgeport police officers, to remain in the area to prevent further incident. (Incident Report 040725-309 at 1; Pls.' Rule 56(a)(2) Statement at ¶ 4.)

At approximately 9:00 p.m., a fight broke out on Garfield Avenue. (Incident Report 040725-309; Pls.' Rule 56(a)(2) Statement at ¶ 5.)  Plaintiffs, a mother and daughter, were with their husbands at an ice cream shop located at the corner of Garfield Avenue and Madison Avenue. (Sheikh Dep. 34:4-15, Aug. 2, 2005.) Plaintiffs' husbands, Mr. Sheikh and Mr. Lupinacci, left the shop and walked toward the fight in order to see what was happening. (Lupinacci Dep. 55:18-22, Aug. 2, 2005; Pls.' Rule 56(a)(2) Statement at ¶ 12.) The police officers stationed in the area ran to the fight to intervene. (Incident Report 040725-309; Sheikh Dep. 37:4-23.)

Plaintiffs allege the following: As Mr. Lupinacci was walking toward the fight he was pushed twice by one of the officers. (Sheikh Dep. 47:4-7.) The officer and Mr. Lupinacci began to yell at each other. (Lupinacci Dep. 57:12-14.) The officer then forced Mr. Lupinacci to the ground and handcuffed him. (Sheikh Dep. 51:19-21.)  Mrs. Sheikh approached one of the

2

officers to ask why her stepfather was being arrested. (Id. at 53:16-19.)  The officer then turned and sprayed her in the face with mace. (Id. at 53:21-22; Sheikh Aff. ¶ 5, Ex. 6 to Pl's Mem. Opp'n Mot. Summ. J.) Mrs. Sheikh then experienced blurred vision and difficulty breathing. (Sheikh Dep. 59:12-20.)  She passed out and was later taken by ambulance to St. Vincent's Hospital Emergency Service. (Id. at 59:22-23.; Sheikh Aff. ¶ 5.; AMR Report, Ex. 8 to Pls' Mem. Opp'n Mot. Summ. J.) One of the officers also attempted to spray mace at Mrs. Lupinacci but missed. (Lupinacci Dep. 61:13-25.) An officer also threatened Mrs. Lupinacci with a K-9 dog and swore at her. (Id. at 60:17-20.)

     Defendants allege that while they were attempting to subdue the fight and disperse the crowd of onlookers, an unidentified officer told Mrs. Lupinacci to leave but she refused. (Id. at 59:23-60:1; Defs.' Rule 56(a)(1) Statement at ¶ 16.)  The officer then sprayed something in her direction but it did not affect her. (Lupinacci Dep. 61:16-25; Defs.' Rule 56(a)(1) Statement at ¶ 16.)  Defendants allege that Mrs. Sheikh was yelling at the officers who were arresting Mr. Lupinacci when "one police officer sprayed mace in her direction, but he did not touch her." (Defs.' Rule 56(a)(1) at ¶ 18.)  Defendants also allege that Mrs. Sheikh was treated at St. Vincent's Hospital for an anxiety attack after walking away from the incident. (Id. at ¶ 46.)

     Plaintiffs named the five listed officers as defendants because they were the officers who filed incident reports pertaining to that evening. (Sheikh Dep. 102:2-25.). In her deposition, Mrs. Sheikh was unable to provide any specific description of the officer who sprayed her other than that he was "white" (Id. at 90:24-91:11.) At the deposition of Mrs. Lupinacci, Defendants requested that she identify the relevant officers from twenty-nine pages of small black and white photographs of all Caucasian and Hispanic police officers employed by the City of Bridgeport.

(Lupinacci Dep. 111:15-22.)  Mrs. Lupinacci then indicated that she was tired and wished to review the photos at a later date. (Id. at 118:5-24.)

Plaintiffs previously sent a notice of deposition to the Custodian of Records for the Bridgeport Police Department requesting photographs of specific Bridgeport police officers. (See Ruling Defs.' Mot. Prot. Order 4, n.2 [Doc. No. 41].)  Defendants moved for a protective order and to quash the subpoena duces tecum. This Court ruled that it was not necessary for Defendants to produce the photographs because pictures of the relevant officers would be included in the twenty-nine pages of the photographs of the Caucasian and Hispanic officers in the Bridgeport police department, which Plaintiff Lupinacci was to review at her deposition. (See Id. at 5-6.)

At present, Mrs. Lupinacci still has not identified a specific officer nor provided a physical description of the officer who attempted to spray her with mace. (Lupinacci Dep. 127:1-23, Nov. 18, 2005.)  She was shown the twenty-nine pages of photographs and was unable to identify the officers named in the complaint. (Id. at 127:13-23; Pls.' Rule 56(a)(2) Statement at ¶ 41.) She indicated that she could not identify any officer because the photos were small and in black and white. (Pls.'Rule 56(a)(2) Statement at ¶ 41.)

Mrs. Sheikh believes that the officer who sprayed her with mace was one of the officers who arrested Mr. Lupinacci. (Sheikh Dep. 94:9-17.)  The police report for the arrest of Mr. Lupinacci notes that the arresting officer was Defendant Pizighelli. (Incident Report 040725-309.) However, Mrs. Sheikh recalls that up to three officers were possibly involved in the arrest of Mr. Lupinacci. (Sheikh Dep. 103:25-104:11.)  She believes that the officer who sprayed mace on her is either Defendant Pizighelli or Ferchette. (Sheikh Aff. ¶ 5.)

On their civilian complaints, Plaintiffs listed the name Mike Mann as one of the officers responsible for spraying mace. (Hernandez Aff. ¶ 6, Ex. X to Defs.' Mem. Supp. Mot. Summ. J.; Pls.' Rule 56(a)(2) Statement at ¶ 23.) However, there has been no officer named Mike Mann employed by the Bridgeport Police Department during the relevant time period. (Hernandez Aff. ¶ 9.)

Plaintiffs filed a complaint against five officers who were assigned to the area that night, alleging that (1) the officers used unreasonable and excessive force in violation of their Fourth Amendment rights (2) the conduct of the officers "shocked the conscience" and violated Plaintiffs' Fourteenth Amendment right to substantive due process, (3) the officers had the duty and opportunity to protect Plaintiffs from this unlawful action but failed to do so, and (4) the officers interfered with Plaintiffs' First Amendment right to peaceably assemble.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538, (1986)). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986)). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 255, and the court should "draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted).

**III.   DISCUSSION**

It is undisputed that Plaintiffs have failed to specifically identify the police officers who engaged in the conduct that allegedly violated their civil rights. Defendants argue that summary judgment should be granted on this basis.

"It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit." Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam).[2] Although

---

[2] Although the Second Circuit relaxed this rule in Valentin, that case involved a pro se plaintiff who was incarcerated and had not had the opportunity to conduct a full pre-trial investigation. See 121 F.2d at 76. There is no reason to relax the general rule in a case such as this, where the plaintiffs

6

some courts have held that when "a party is ignorant of the defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court," Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980); Maggett v. Dalsheim, 709 F.2d 800, 803 (2d Cir. 1983) (endorsing the Seventh Circuit's view), this rule does not apply at the summary judgment stage, when plaintiffs have had the opportunity to conduct pre-trial discovery.

    Courts have held that "in order to establish a civil rights violation, those responsible for the alleged violating conduct must be specifically identified." Taylor v. Brockenbrough, No. 98-6419, 2001 U.S. Dist. Lexis 21056, at * 7 (E.D. Pa. Dec. 19, 2001); see also Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997). In Taylor, an arrestee was assaulted by police officers while he was standing facing a wall. The arrestee was unable to "get a good look" at the officers' faces and therefore could not identify them, although he did record the license plate number of the patrol car. Taylor, 2001 U.S. Dist. LEXIS 21056 at *2-3. Three defendants were named because patrol logs indicated they were in the vicinity of the incident at the time and two were named because they were assigned to the patrol car identified by the plaintiff. Id. at *8. The court held that this "circumstantial evidence" of the defendant's identity was insufficient to allow a reasonable jury to find that those three officers violated the plaintiff's civil rights. Id. at *8-9. The court granted the defendants' motion for summary judgment based on the plaintiff's testimony that only one officer had abused him, reasoning that for a jury to try to determine which officer was responsible would be "asking it to perform guesswork." Id. at *9-10. Because "no discovery was conducted nor were depositions of these police officers taken," the court held

---

are not pro se, are not incarcerated, and have had an opportunity to conduct discovery.

that the plaintiff had "not provided any evidence from which a reasonable jury could determine" which officer was responsible for beating him. Id. at *9. The court relied on Sharrar v. Felsing, a Third Circuit case which held that because the arrestee plaintiff was "unable to identify which police officers were in the police car with him at the time of the alleged abuse," summary judgment was proper on his excessive force claim as "[t]here was... no evidentiary basis on which to hold [the] defendants liable." Sharrar, 128 F.3d at 821.

The Ninth Circuit reached a different conclusion in Dubner v. City and County of San Francisco, 266 F.3d 959 (9th Cir. 2001). In Dubner, the plaintiff made a claim for unlawful arrest but was unable to identify the officers who arrested her. The court, utilizing a burden-shifting schemata,[3] held that the plaintiff did not have the burden to prove the identity of the arresting officers in order to make a prima facie case for unlawful arrest. Id. at 965. Dubner, however, is distinguishable from the present case.

First, the Ninth Circuit's decision was influenced by the fact that San Francisco police department procedure was to name the first officer on the scene as the arresting officer, regardless of whether that was the officer who made the arrest. Id. The court viewed this practice as a deliberate attempt to frustrate potential claims and permit police officers to "hide behind a shield of anonymity and force plaintiffs to provide evidence they cannot possibly acquire." Id.

---

[3] The Dubner court laid out a burden-shifting schemata to evaluate the plaintiff's claim for unlawful arrest, saying that: "Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant. . . . If the defendant is unable or refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful." 266 F.3d at 965 (internal citations omitted).

The court reasoned that placing the burden of production on the defendant to show that the arresting officer had probable cause "forces the police department, which is in the better position to gather information about the arrest, to come forward with some evidence of probable cause." Id. There is no evidence to suggest that the Bridgeport department's policy is similar to the policy at issue in Dubner or would similarly permit police officers who use excessive force to remain anonymous. Moreover, in Dubner, the plaintiff had "done everything she possibly could to identify the arresting officers." Id. In contrast, Plaintiffs Sheikh and Lupinacci have not. Plaintiffs argue that they should be given the opportunity to identify the officers in person at trial. Trial is not the only opportunity, however, for Plaintiffs to attempt to identify Defendants. Plaintiffs have had sufficient time, throughout the course of discovery, to arrange for a time and place to identify the specific defendants. Finally, Dubner involved a claim for unlawful arrest, whereas the present action involves only a claim for excessive force, which does not involve a showing of probable cause. Accordingly, the burden-shifting schemata utilized in Dubner is not applicable to this action. See Taylor, 2001 U.S. Dist. LEXIS 21056 at *7 n.4.

As in Taylor, Plaintiffs have not deposed the Defendant officers and are attempting to avoid summary judgment by presenting circumstantial evidence linking Defendants to the incident. See 2001 U.S. Dist. LEXIS 21056, at *9-10. Plaintiffs named all five police officers who filed reports with regard to the incident in question, however, Plaintiff Sheikh has stated that only one officer sprayed mace on her. (See Sheikh Aff. ¶ 5.) Without more discovery and depositions of the police officers, there is insufficient evidence from which a reasonable jury could determine which of the five officers was responsible for spraying mace at Plaintiff Sheikh. As in Taylor, "[a]sking a jury to make this determination would be tantamount to asking it to

perform guesswork," and "Defendants have a right not to be tried under such circumstances." 2001 U.S. Dist. LEXIS 21056 at *10.

IV.     CONCLUSION

It has been over a year since this case began and Plaintiffs are still unable to identify the specific police officer responsible for spraying Plaintiff Sheikh with mace.  Plaintiffs have not produced any evidence that would allow a rational jury to determine which of the five potential officers was the one who actually engaged in the conduct at issue here.  Because there is no rational basis for a jury to choose which of the named defendants is responsible for the conduct, Defendants' Motion for Summary Judgment [Doc. No. 42] is **granted**.  As this disposes of all of Plaintiffs' claims, it is unnecessary to address the other issues raised in the parties' briefs.  The clerk shall close the case.

       SO ORDERED.

Dated at New Haven, Connecticut, July  27 , 2006.

/s/

Peter C. Dorsey, U.S. District Judge

United States District Court